903 F.Supp. 959 (1995)
BEACH COVE ASSOCIATES, a Joint Venture, Consisting of Beach Cove Development Corporation, Joint Venturer; Sherwood Development Corporation, Joint Venturer; Spartanburg Beach Cove Associates, a South Carolina General Partnership, Joint Venturer, Consisting of Bob Wood Investments, Inc., Partner; Mid-South Management, Inc., Partner; U.S. Land Company, Inc., Partner, Plaintiffs,
v.
UNITED STATES FIRE INSURANCE COMPANY, Defendant.
Civ. A. No. 4:95-2768-22.
United States District Court, D. South Carolina, Florence Division.
November 1, 1995.
*960 Kathryn Malloy Cook, Howell V. Bellany Jr., Myrtle Beach, SC, for plaintiffs.
Charles Edward Hill, Columbia, SC, for defendant.

ORDER
CURRIE, District Judge.
Beach Cove Associates ("Plaintiff'), a South Carolina joint venture, moves this court for an Order remanding its declaratory judgment action against United States Fire Insurance Company ("Defendant") to state court.

I. FACTS AND PROCEDURAL HISTORY
Plaintiff was formed to develop a condominium project in North Myrtle Beach, South Carolina. On August 7, 1995, Plaintiff commenced a declaratory judgment action against Defendant, its insurer, in the Horry County Court of Common Pleas. Plaintiff asked the state court to declare that Defendant has an obligation to defend it in two underlying construction deficiency cases that were, and still are, pending in the Horry County Court of Common Pleas.
On August 21, 1995, Defendant sought removal to this court based on complete diversity of citizenship. Plaintiff concedes that diversity exists, but asks the court to decline to exercise jurisdiction and remand the case to state court in light of the parallel proceedings pending there.

II. DISCRETION UNDER THE DECLARATORY JUDGMENT ACT
This is an action for declaratory relief under the Federal Declaratory Judgment Act (the "Act"), which provides in part:
In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
28 U.S.C. § 2201 (emphasis added).

A. Fourth Circuit Precedent
Several recent cases have examined the issue of district-court discretion under the Act. The most recent, Continental Casualty Co. v. Fuscardo, 35 F.3d 963 (4th Cir.1994), requires this court to consider the following *961 factors in deciding whether or not to exercise jurisdiction under the Declaratory Judgment Act:
1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; 2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; 3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and 4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for res judicata.
Id. at 966 (citing Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir.1994)). The weight to be afforded each factor may vary, but "[t]he first concern supporting dismissal of the declaratory action is the state's interest in deciding questions of state law." Mitcheson v. Harris, 955 F.2d 235, 237 (4th Cir.1992). In Mitcheson, the court made it clear that "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable state law, and that voice belongs to the state courts when state law controls the resolution of the case." Id.
Defendant argues that Mitcheson was poorly reasoned and that the Fourth Circuit's subsequent decision in Nautilus Insurance Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir.1994), narrowed this court's discretion to decline to exercise jurisdiction in a declaratory judgment action in the face of pending state litigation. Defendant notes that under Nautilus, even if state law governs all the issues in a federal declaratory action, "that alone provides no reason for declining to exercise federal jurisdiction." Nautilus, 15 F.3d at 378. Defendant also argues that in order to decline jurisdiction under Nautilus, this court must determine that the issues pending in state court are novel ones.
Although Nautilus suggested that a "requirement that the state law issues be `difficult' or `unsettled' [was] implicit in Mitcheson," id., the subsequent Continental Casualty Co. decision demonstrates that there is no such requirement. In Continental Casualty Co., the court affirmed the decision of the district court not to exercise jurisdiction in the face of pending state litigation despite the fact that "the questions of state law involve[d] the application of relatively settled principles of law." Continental Casualty Co., 35 F.3d at 967. The fact that the legal issues involved were settled may have lessened the state's interest in deciding the case, but other factors justified the decision to decline jurisdiction. Id.
Defendant also argues that "[a] federal court has the discretion to decline to entertain a declaratory judgment action, but, under the law of this Circuit, the court must do so only for `good reason.'" Id. at 965 (quoting Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir.1937)). Defendant contends that under Nautilus there is a bias towards extending federal jurisdiction even where parallel state proceedings exist. "[W]e have held that a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds the declaratory relief sought (I) will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Nautilus, 15 F.3d at 375 (citations omitted). Defendant bolsters its argument by noting that the Fourth Circuit concluded that, given the preceding caveats, "we therefore `do[ ] not approach the case in a wholly deferential posture,' but instead `exercise [our] own judgment in reviewing the various interests at stake. We have characterized this review ... as essentially `de novo.'" Id. (citations omitted)

B. The Supreme Court
In Wilton v. Seven Falls Co., ___ U.S. ___, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Supreme Court recently underscored the discretionary nature of the jurisdiction conferred under the Act:
By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. *962 Consistent with the non-obligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.
Id., 115 S.Ct. at 2143. The Fourth Circuit has not had occasion to revisit the issue of discretion in a declaratory judgment case since Wilton. The Supreme Court's holding in that case, however, indicates that a district court's discretion under the Declaratory Judgment Act is now wider than it was under pre-Wilton Fourth Circuit precedent.
In Wilton, the Court resolved two circuit conflicts concerning the standard governing a district court's decision to decline jurisdiction in a declaratory judgment action. Several circuits had determined that a district court could not do so absent "exceptional circumstances." Others, like the Fourth Circuit, found that a district court had more discretion. Wilton, ___ U.S. ___, 115 S.Ct. at 2140. The Court, affirming its earlier reasoning in Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), held that the exceptional circumstances test was overly limiting in the declaratory judgment context. Id., ___ U.S. at ___, 115 S.Ct. at 2144 (noting that Brillhart defines a district court's discretion in a declaratory judgment action). It also held that the applicable standard for an appellate court's review of a district court's decision against exercising jurisdiction in a declaratory judgment action was not de novo, but abuse of discretion. Id.
The latter holding clearly overruled the Fourth Circuit's de novo review standard and indicates that the Fourth Circuit's interpretation of a district court's scope of discretion under the Declaratory Judgment Act was too narrow. The Court's reasoning also supports a broad interpretation of the effect of parallel state law actions on the district court's exercise of jurisdiction. "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Id., ___ U.S. at ___, 115 S.Ct. at 2140 (quoting Brillhart). That admonition also undercuts Defendant's narrow interpretation of the importance of parallel state actions under Fourth Circuit precedent.
The Court's language displays a bias towards not exercising jurisdiction when parallel state proceedings are pending.[1] There appears to be no suggestion that those proceedings must be novel or complex. In other words, under Wilton, the existence of parallel state proceedings would appear in itself to be "good reason" for this court to exercise its discretion to decline jurisdiction under the Act.[2]

III. ANALYSIS
Under the clearly defined four-part test delineated by the Fourth Circuit, and in light of the Supreme Court's recent interpretation of the Act, this court grants Plaintiff's motion for remand to state court.[3]
As discussed above, the first factor to be considered is the state's interest in having the issues raised decided in state court. State insurance law governs all the issues raised in this case. State courts have a particular interest in deciding questions of insurance law. See, e.g., SEC v. National Securities, Inc., 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). Also, many of the factual and legal issues raised in this *963 declaratory judgment action are being litigated in state court in the underlying construction deficiency cases.[4]
The existence of those two cases also goes to the second factor, judicial efficiency. The state court is familiar with the controversies underlying this action. It would be wasteful to have this case proceed on a parallel track with the state cases. If there is a verdict for Plaintiff in those cases the coverage issue will be moot. Defendant argues that the state court is already facing a complex set of issues in the underlying litigation and that adding this declaratory judgment action to its docket would result in confusion and inefficiency. The existence of a complex parallel proceeding, however, undercuts Defendant's position. Efficiency dictates that resolution of issues stemming from one controversy should be resolved by one court. See Continental Casualty Co., 35 F.3d at 968.
The third factor is unnecessary entanglement between federal and state courts due to overlapping issues of fact or law. As discussed above, the issues clearly overlap. All issues are solely matters of state law. Defendant argues that this court should deny Plaintiff's motion because its case will stand a "substantial chance of being given short shrift in state court" and that it is "convinced that a more thorough and careful analysis of the coverage question will be made by this court." Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand at 16. That argument has no merit. Comity dictates declining federal jurisdiction. Accepting jurisdiction could result in interference with the underlying construction deficiency cases and might imply that the state court is unable to conduct its own declaratory judgment action. See Continental Casualty Co., 35 F.3d at 968 (noting that a state court is just as capable of resolving an insurance coverage question as a district court).
The fourth consideration is whether the federal action is being used merely as a device for procedural fencing. Plaintiff is currently defending the underlying construction deficiency cases in state court. As a result of those state cases, Plaintiff initiated this declaratory judgment action in state court. As noted above, the state court is certainly as capable as this court is to decide the issues presented in this parallel declaratory judgment action. In fact, given its familiarity with the underlying cases and state insurance law, it is more qualified to do so. It appears to the court that Defendant's attempt to have this court decide the issues presented in the declaratory judgment action was the type of "procedural fencing" discussed in Continental Casualty Co. Defendant's belief that the state court will be unable to render an "independent, unbiased and reasoned decision," see Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand at 18, does nothing to change that conclusion.

IV. CONCLUSION
The court grants Plaintiff's motion and declines to exercise diversity jurisdiction over Defendant's declaratory judgment action.
This case is therefore remanded to the Horry County Court of Common Pleas. A certified copy of this order of remand shall be mailed by the Clerk of this court to the Clerk of the Court of Common Pleas, Horry County, South Carolina.
IT IS SO ORDERED.
NOTES
[1] Other district courts have employed a similar interpretation of Wilton. See The Haagen-Dazs Shoppe Co. v. Born, 897 F.Supp. 122 (S.D.N.Y. 1995); Richardson v. Lloyds of London, 896 F.Supp. 428 (E.D.Pa.1995); Aetna Casualty & Surety Co. v. Kelly, 889 F.Supp. 535 (D.R.I.1995).
[2] This conclusion is bolstered by the Court's statement that "[w]e do not attempt to delineate the outer boundaries of [the district court's discretion to decline jurisdiction under the Declaratory Judgment Act] in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." Wilton, ___ U.S. at ___, 115 S.Ct. at 2144. The court also notes that much of the Fourth Circuit language which Defendant cites as limiting the discretion of this court relies on Quarles, a case decided in 1937, several years before Brillhart.
[3] The court notes that it would have reached the same conclusion even without the Supreme Court's recent decision in Wilton.
[4] The parties dispute the novelty of the state law issues raised in the underlying proceedings. As discussed above, novelty is not a prerequisite for a determination that the state has an interest in deciding an issue of law; it only affects the level of the state's interest. In this case, although it appears to the court that the issues involved are not particularly novel, other factors weigh on the side of remand.